UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHANASIOS LAMBRO,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 07-3306 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Anthanasios Lambro filed this action on June 1, 2007. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on June 12 and 14, 2007. On March 7, 2008, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court remands for further proceedings consistent with this Opinion.

///
///
///
///

# I.

## PROCEDURAL BACKGROUND

On August 23, 2001, Lambro filed an application for supplemental security income benefits, which the Commissioner initially denied. A.R. 55, 61-64, 71-75. The Administrative Law Judge ("ALJ") conducted a hearing on March 13, 2003, at which Lambro and a vocational expert ("VE") testified. A.R. 243-261. On April 4, 2003, the ALJ issued a decision denying benefits. A.R. 134-139.

On September 21, 2004, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. A.R. 143-146. The Council ordered the ALJ on remand to (1) obtain additional evidence concerning Lambro's impairment, which may include "a consultative examination with psychological testing and medical source statements about what the claimant can do despite the impairment"; (2) evaluate further Lambro's impairment "in accordance with the special technique described in 20 CFR 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 416.920a(c)";[1] (3) further consider the RFC during the entire period, evaluating the treating and examining opinions pursuant to the appropriate regulations and nonexamining opinions in accordance with other regulations; and (4) obtain supplemental evidence from a vocational expert. A.R. 145-146.

On November 29, 2005, a second hearing was held before the same ALJ, at which Lambro and a VE testified. A.R. 222-242. On December 22, 2005, the ALJ issued a decision denying benefits. A.R. 12-22. On March 29, 2007, the Appeals Council denied Lambro's request for review. A.R. 6-9.

This lawsuit followed.

---

[1] The "four broad functional areas" are "[a]ctivities of daily living; social functioning, concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 416.920a(c)(3).

2

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A.   Disability

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

### B.   The ALJ's Findings

The ALJ found that Lambro had a severe impairment of anxiety disorder with panic attacks. A.R. 21. Lambro had the residual functional capacity to

perform "work at all exertional levels that would allow for mild to moderate limitations in the ability to understand and remember simple tasks, sustain concentration and persistence, socially interact with the general public and adapt to workplace changes." *Id.* Lambro has never worked. A.R. 22. Based on his residual functional capacity, the ALJ found that Lambro could work a significant number of jobs, including as a landscape laborer, hand packager, housekeeping cleaner, and sewing machine operator. *Id.*

### C. ALJ's Consideration of Dr. Winston's Opinion

Lambro argues that the ALJ erred by improperly rejecting the opinion of a treating psychiatrist, Dr. Winston. JS 8. The ALJ stated that he "gives no weight to [Dr. Winston's] assessment as it is based upon the claimant's subjective complaints which are inconsistent with the evidence of record and contradicted by the claimant's own reports of feeling 'good' and taking effective medication." A.R. 18. Moreover, "the extreme limitations set forth by Dr. Winston are not supported by the evidence of record, including his, and the associated therapist's, treatment notes and the claimant's daily activities." A.R. 19.

Where, as here, the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors including the following: (1) length of the treatment relationship and frequency of examination;[2] (2) nature and extent of the treatment relationship;[3] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician

---

[2] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[3] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

4

providing the opinion. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527(d)(1)-(6).

Social Security Ruling 96-2p explains that "a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 631-32 (quoting SSR 96-2p).

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn*, 495 F.3d at 631. To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn,* 495 F.3d at 632 (citations omitted and internal quotations omitted).

Here, according to the medical records, Dr. Winston saw Lambro approximately 25 times during the period July 2002 through mid-2005 (at the time of Lambro's hearing). As described below, Dr. Winston's treating relationship over this period of time enabled him to obtain a "longitudinal picture" of Lambro's impairment. *See* 20 C.F.R. § 404.1527(d)(2)(i). A treating physician's opinion is entitled to greater weight because "'he is employed to cure and has a greater

///

opportunity to know and observe the patient as an individual.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

The ALJ discounted Dr. Winston's opinion because it was based on Lambro's subjective complaints. There is no evidence that Dr. Winston administered any mental examination other than a "Mini-Mental State Exam" on which Lambro appears to have achieved the maximum score.[4] A.R. 178. Although the absence of objective testing may be sufficient to deny Dr. Winston's opinion controlling weight, it does not justify rejecting Dr. Winston's opinion entirely. *See Orn*, 495 F.3d at 632 (quoting SSR 96-2p).

The ALJ also noted an inconsistency between the Report and Lambro's daily activities. This alone is not an adequate basis for rejecting Dr. Winston's opinion. Dr. Winston opined that Lambro does not have any restrictions on activities of daily living. A.R. 185. The ALJ did not identify any activities of daily living that would be relevant to Lambro's ability to perform work. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Finally, the ALJ also found that the "extreme limitations" set forth in Dr. Winston's report dated August 28, 2003 ("Report") were inconsistent with his medical records and that of his associated therapist, Ms. Nakayama.

The Report noted that Lambro's "anxiety tends to be episodic, frequent rather than persistent generalized." A.R. 183. Dr. Winston opined that Lambro would have difficulty working at a regular job on a sustained basis. A.R. 185. Dr. Winston indicated that Lambro had no restriction on activities of daily living and seldom would experience deficiencies of concentration, persistence or pace.

---

[4] This case is, therefore, distinguishable from *Ryan v. Commissioner of Social Security*, 528 F.3d 1194 (9th Cir. 2008), in which the psychiatrist performed a mental status examination and recorded his clinical observations. An ALJ cannot discount a treating psychiatrist's opinion based on the claimant's credibility "where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Id.* at 1199-1200.

6

A.R. 185.  However, Lambro had "marked" limitations in maintaining social functioning and would have "continual" episodes of deterioration or decompensation in work settings.  *Id.*

The ALJ noted that, in August 2003, Dr. Winston wrote that the claimant "needs 'push' to do more."  A.R. 19; A.R. 203.  Dr. Winston's notes indicate that Lambro had settled into a "rut," with "family was not pushing for him to do more, seems to have 'accepted' his impairment."  A.R. 203.  Winston says that he and Lambro "discussed pitfall of this, not challenged to do more, Pt less overtly anxious, agrees he is comfortable in family situation."  *Id.*  Lambro agreed to increase "hierarchy of challenges."  *Id.*

As the ALJ notes, Lambro started boxing at a local gym in November 2003.  A.R. 19; A.R. 201.  Winston notes that Lambro is "pleasant," "receptive."  A.R. 201.  In December 2003, Lambro states that he is boxing 2 hours per day except Sunday, getting out more, and dating.  A.R. 19; A.R. 201.  Winston notes that Lambro is "calm, "pleasant."  A.R. 201.  In February 2004, Lambro reported that he thinks they found the right level of medication, that he is doing more socializing and going to the boxing gym "by myself."  A.R. 198.  His goal was to get into coaching.  *Id.*  In April 2004, Lambro reported being "gradually more able to go out longer, farther away from home" and that he "can't remember last time I had a bad anxiety spell."[5]  A.R. 199.  Again, Winston described Lambro as "pleasant."  *Id.*  In June 2004, Lambro reported to Winston that his anxiety is much lower and "no panic attacks."  Also in June 2004, Lambro reported to Nakayama that he "works as a boxing coach," lives with his girlfriend, and attributed his panic attacks to his heavy use of marijuana in the past.  A.R. 19; A.R. 195.

///

---

[5]  The ALJ incorrectly notes the date as August 2004.  A.R. 19.

As the Ninth Circuit has acknowledged, notations that anxiety is improving must be read in the context of the overall diagnostic picture. *Ryan*, 528 F.3d at 1200-01. "That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer serious affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (footnote omitted).

Here, at the same time Lambro's anxiety is decreasing in severity, Dr. Winston and Nakayama note in June 2004 that Lambro reports increasing anger. A.R. 18; A.R. 194 ("pt stated that his main problem is his lack of controlling his anger"); A.R. 196 ("problems lately with increased anger, loss of control, temper, throwing things, not sure why").

The ALJ does not mention Dr. Winston's emerging diagnosis of mood disorder, bipolar type beginning in June 2004 and continuing through mid-2005 in the medical records received before Lambro's hearing. A.R. 18; A.R. 186, 188, 189, 190, 197, 214. The ALJ did not set forth specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Winston's opinion.

On remand, the ALJ should consider Dr. Winston's diagnosis and treating medical records under the governing legal standards. Consideration of treating medical records is not cured by citation to Dr. Bagner, a consultative examining physician, who saw Lambro on August 9, 2005. Dr. Bagner, without explanation, did not review Lambro's medical records after May 2003. A.R. 205. Lambro testified that the examination lasted at "the most 15 minutes." A.R. 241. Dr. Edelman, another consultative examining physician, did not review any treating medical records and saw Lambro in January 2002.[6] A.R. 106. Dr. Millians, a

---

[6] Dr. Edelman gave Lambro a GAF score of 60, which indicates "moderate symptoms." Diagnostic and Statistical Manual of Mental Disorders-IV at 32 (4th ed. 1994). By contrast, Dr. Bagner gave him a GAF score of 80, which indicates

8

nonexamining physician, does not indicate that he reviewed any medical records. A.R. 126-130. In any event, his assessment is also dated January 2002. *Id.* Opinions of a nonexamining physician may serve as substantial evidence "when it 'is not contradicted by *all other evidence* in the record'" and "when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (emphasis in original) (citation omitted).

The Court notes that the Commissioner is required to assess whether a claimant has the ability to work on a sustained basis. *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); 20 C.F.R. § 404.1512(a). "[O]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). The regulations specified in the Appeals Council's remand instructed the ALJ to take into account 20 C.F.R. § 416.920a(c) (A.R. 145), which addresses the issue of working "on a sustained basis" and requires consideration of "any episodic limitations." 20 C.F.R. § 416.920a(c)(2). On remand, the ALJ should address Lambro's ability to undertake sustained work activity given his mental impairments.

If appropriate, the ALJ may develop the record further by obtaining additional consultative examination, including diagnostic psychological testing. Consideration of the treating medical records, and any additional evidence, may affect the remaining steps in the sequential analysis. If the proceedings on remand lead to a change in the RFC determination, the rest of the sequential analysis may have to be adjusted.

### D. Allegations of ALJ Bias

On June 28, 2005, a hearing was held. A.R. 216. At the beginning of the hearing, the ALJ said he should have ordered a consultative examination but did

---

"slight symptoms." Diagnostic and Statistical Manual of Mental Disorders-IV at 32 (4th ed. 1994).

9

not. A.R. 219. The ALJ said he didn't know why he didn't do it, apologized, and said it was his mistake. A.R. 219-220. Counsel for Lambro said that the record was well-developed from the treating physician, and that if the ALJ required anything further, "the regulations state that you should go to the treating physician first." A.R. 219. The ALJ responded: "I don't get automatically paid people (sic) based on treating physicians on psychiatric cases, and so we are going to have to order a consultative examination." *Id.*

Lambro argues that 20 CFR § 404.1512(f) requires that the ALJ first go to the treating source. JS 10. Lambro also argues that the ALJ's comments indicate actual bias against a treating physician "in a mental case." JS 17-18.

Lambro has failed to make the required showing "that the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment." *Bayliss*, 427 F.3d at 1214-15 (internal quotation marks omitted). The ALJ properly obtained the medical records from the medical treatment source, who did not conduct or rely on diagnostic psychological testing to make his diagnosis. The ALJ is not required to stop there. The ALJ's ordering of a consultative examination was appropriate in light of the Appeals Council's instructions on remand. A.R. 145.

### E.  Sylvia Zamora's Questionnaires

Sylvia Zamora, a friend of Lambro's, did not testify at the hearing before the ALJ. She did, however, complete two questionnaires, one on August 23, 2001 (A.R. 93-94, 91-92), and the second on October 12, 2001 (A.R. 97-102). The ALJ did not mention the questionnaires in his decision. Lambro argues that remand is required under *Stout v. Commissioner*, 454 F.3d 1050 (9th Cir. 2006), which issued after the ALJ's decision in this matter.

In his decision, "the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Most of the cases concern a failure to consider lay witness

10

testimony, not questionnaires. "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Even assuming that the ALJ was obligated to address Zamora's questionnaires, any error was harmless. No reasonable ALJ, when fully crediting the questionnaires, could have reached a different disability determination. Zamora's questionnaires were internally inconsistent and, at best, cumulative. For example, in the August 2001 questionnaire, Zamora wrote that Lambro could do laundry (A.R. 94), whereas in the October 2001 questionnaire, she wrote that he needed to have his clothing washed for him (A.R. 98). As another example, the August 2001 questionnaire indicates that Zamora is not sure about Lambro's sleeping hours (A.R. 93), whereas the October 2001 questionnaire provides detailed information about sleeping (A.R. 97). Zamora describes herself as Lambro's friend (A.R. 97), but later states he has no friends (A.R. 100). These examples are not exhaustive. *See also Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (the Commission must explain only "why significant probative evidence has been rejected") (citation and internal quotation marks omitted).

### F. Lambro's Testimony

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Here, the ALJ made no finding at step one, but continued to step two.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

Here, the ALJ did not find that Lambro was a malingerer. However, the ALJ did find that Lambro's subjective allegations were "not credible." A.R. 19, 21.

For purposes of the remand, the Court focuses on the ALJ's finding that Lambro's allegation of angry outbursts were not fully credible.[7] The ALJ's reasons are not clear and convincing. The ALJ notes that Lambro did not report anger episodes to Drs. Edelman or Bagner. A.R. 19. First, Dr. Edelman met Lambro in January 2002. As described above, Lambro's anger episodes did not manifest themselves in Dr. Winston's medical records until June 2004. Second, Dr. Bagner did not review Lambro's medical records after May 2003, and the examination lasted no more than 15 minutes. A.R. 205, 241. It is not clear that Dr. Bagner asked Lambro about anger episodes. The ALJ also notes that Lambro's explosive anger has not been observed by any mental health professional. A.R. 19. This reason is insufficient alone. While, as discussed above in connection with Dr. Winston's opinion, it may be true that there is no objective medical testing in the record, an ALJ may not reject subjective symptom testimony solely because it is not supported by objective medical evidence. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical

---

[7] The ALJ found Lambro's other subjective complaints to be "not fully credible" based on inconsistencies in his testimony and activities. A.R. 20. The Court notes the inconsistencies in testimony and activities. However, because the Court is remanding on other grounds, the Court will not address those findings here.

12

1 | evidence cannot form the sole basis for discounting pain testimony, it is a factor
2 | that the ALJ can consider in his credibility analysis.").
3 |      On remand, if Lambro engages in daily activities involving skills that could
4 | be transferred to the workplace, "[t]he ALJ must make 'specific findings relating to
5 | [the daily] activities' and their transferability to conclude that a claimant's daily
6 | activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639
7 | (citations omitted). "Only if the level of activity were inconsistent with the
8 | Claimant's claimed limitations would these activities have any bearing on
9 | Claimant's credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

## IV.

## ORDER

IT IS HEREBY ORDERED that the matter is remanded for proceedings consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 7, 2008

ALICIA G. ROSENBERG
United States Magistrate Judge

13